IN THE UNITED STATED DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| STEPHEN HOUSE ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No: |
| ) | |
| WILLIAM S. DAVIS, ) | JURY DEMAND |
| ALLAN SULLIVAN, ) | |
| ROBERT NICHOLSON, ) | |
| AMY COOK PUCKETT, and ) | |
| HICKMAN COUNTY, TENNESSEE ) | |
| ) | |
| *Defendants.* ) | |

# COMPLAINT

1. Plaintiff Stephen House brings this action pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165 and related regulations ("ADA"), and 42 U.S.C. § 1983 for damages against Defendants William Shane Davis, Allan Sullivan, and Robert Nicholson, who are all law enforcement officers employed by Hickman County Sheriff's Office ("HCSO"), Judge Amy Cook Puckett, presiding judge of the General Sessions Court for Hickman County, Tennessee, and Hickman County, Tennessee. The lawsuit stems from a May 22, 2024 Incident at the Hickman County Justice Center ("Justice Center") that resulted in Mr. House's unlawful arrest, the filing of unlawful disorderly conduct charges against him, and Mr. House's exclusion from the Hickman County Justice Center because of Defendants' failure to reasonably accommodate his disability.

## PARTIES

2. Plaintiff Stephen House ("Mr. House") is an adult resident of Dickson County, TN.

3. Defendant Willian Shane Davis ("Deputy Davis") is an adult resident of Hickman County, TN.

4. Defendant Allan Sullivan ("Deputy Sullivan") is an adult resident of Hickman County, TN.

5. Defendant Robert Nicholson ("Deputy Nicholson") is an adult resident of Hickman County, TN.

6. Defendant Amy Cook Puckett ("Judge Cook Puckett") is an adult resident of Hickman County, TN.

7. Defendant Hickman County, Tennessee ("Hickman") is a governmental entity organized under the laws of the State of Tennessee.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because all claims related to this case occurred in this district.

## FACTUAL BACKGROUND
### A. Mr. Stephen House: A Hearing-impaired Cabinetmaker

9. Mr. House is a cabinetmaker who previously served in the United States Marine Corps.

10. Mr. House served in the marines for three years, after enlisting at the age of nineteen. Mr. House was then honorably discharged after completing his service.

11. Mr. House then went to work for Sudberry Millwork, where he worked for approximately fifteen years. Mr. House then left Sudberry to open his own business as a cabinetmaker.

12. Mr. House has since been in business for nearly thirty years. The majority of his clients are in the Belle Meade area of Middle Tennessee, but he is known far and wide. Mr. House has made cabinets for clients all over the country, from North Carolina to Oregon.

13. Mr. House is married with two adult children, three adult stepchildren, and nine grandchildren.

14. Mr. House is currently sixty-seven-years-old and suffers from documented moderate to severe hearing loss in both ears. At the time of the May 22, 2024 incident that gives rise to this case, Mr. House was sixty-six years old.

### B. Mr. House's Misdemeanor Probation

15. In the fall of 2023, Mr. House was charged with resisting arrest stemming from a traffic stop for speeding.

16. Mr. House displayed his driver's license but refused to surrender it to the Deputy who had initiated the traffic stop. The Deputy then attempted to enter Mr. House's vehicle and Mr. House held his car door shut. This formed the basis for the resisting arrest charge.

17. On April 15, 2024, Mr. House entered a plea of no contest to the charge of resisting arrest and was placed on six months of supervised probation in Hickman County General Session Court case number 24-CR-216.

18. As part of his probation, Mr. House was required to report to a probation officer whose office is located in administrative offices that the County has chosen to house inside the Hickman County Justice Center ("Justice Center").

19. Mr. House was also required to pay probation fees at the clerk's office, which is also located in the Justice Center.

20. The General Sessions Court of Hickman County is also located in the Justice Center.

21. Judge Cook Puckett is the general sessions judge for Hickman County.

22. Judge Puckett is Hickman County's only county-level judge, with the other judges who serve there being Circuit judges who also hear cases in other counties within Tennessee's 32nd judicial district. Judge Hickman's work email address is "judge@hickmancountytn.gov."

23. On information and belief, in addition to presiding over court hearings, Judge Puckett serves as the chief administrator over the Justice Center.

24. The County has a blanket rule, issued by Judge Puckett, stating that no cell phones are allowed inside the Justice Center.

25. The County's "no cell phone" rule does not include any exceptions for the accommodation of disabilities, for instance where a hearing-impaired person's hearing aids are managed through a cell phone application.

26. Mr. House wears hearing aids to compensate for his hearing loss.

27. Mr. House's hearing aids are designed to be managed through his cell phone app. Mr. House's hearing aids are wirelessly connected to his cell phone, which is used to activate and deactivate his hearing aids and to calibrate, control, and adjust the volume on them.

28. While Mr. House's hearing aids can technically continue to function outside the presence of his cell phone, he is unable to make any adjustments for things like changes in ambient noise, different speakers' voice volume, or any other circumstances necessary to actually facilitate communication. Thus, without access to his cell phone Mr. House's hearing aids can only "work" in the way that a car can technically "work" even if it has no steering wheel.

29. Mr. House appeared for general sessions court at the Justice Center five times before the May 2024 incident at issue in this case.

30. At one of those appearances, in late 2023, Justice Center staff prohibited Mr. House from entering the courtroom with his cell phone. However, Judge Puckett, in interacting with Mr. House in court, noted Mr. House's hearing and understanding difficulties. When Mr. House informed her that he needed his cell phone to operate his hearing aids, she gave him permission him to retrieve his cell phone from his car and to re-enter the courtroom with it so that he could hear and understand the proceedings.

31. However, when Mr. House appeared at subsequent court dates Hickman County Sheriff's deputies initially refused to allow Mr. House into the building with his cell phone. Each time, Mr. House had to reiterate why he needed to bring it in with him, the deputies had to check with Judge Puckett, and Judge Pucket had to give *ad hoc* permission for Mr. House to enter with it.

32. The same Sheriff's deputies, including Defendants Nicholson and Davis, were almost always the ones on duty at the entrance of the Justice Center.

33. Thus, by May 22, 2024 the Justice Center Sheriff's deputies were familiar with Mr. House and his hearing impairment, and were well-aware that Mr. House needed to have his cell phone with him to manage his hearing aids.

34. Likewise, Judge Puckett was aware that the deputies continued to deny Mr. House entry to the Justice Center with his cell phone, and that each time he came she had to give *ad hoc* permission for Mr. House to enter. Throughout this period, Judge Puckett failed to amend the formal "No cell phones" policy to accommodate Mr. House's disability.

35. Mr. House's preference for the use of his hearing aids with his cell phone is entitled to "primary consideration" for an auxiliary aid for a qualifying disability under ADA regulation 28 CFR 35.160(b)(2).

### C. Defendants Deny Mr. House Access to the Justice Center and Arrest Him

36. On the morning of May 22, 2024, Mr. House arrived at the Justice Center just after 8:05 AM for a scheduled meeting with his probation officer, and to pay fees at the Clerk's office.

37. Compliance with the probation reporting requirements was a condition of Mr. House's probation, and he was required to appear for his meeting.

38. Public access to the clerk's office and the probation office requires passage through a security checkpoint, which is staffed and controlled by the County's deputies.

39. Prior to entering the building, Mr. House called his probation officer and informed her that he was on the premises and coming in for his meeting.

40. Mr. House then entered the Justice Center, carrying his cell phone in his hand.

41. Upon entering the Justice Center, Mr. House was confronted at the security checkpoint by Deputies Davis, Sullivan, and Nicholson.

42. The Deputies informed Mr. House that Judge Puckett had signed an order prohibiting the possession of a cell phone inside the building.

43. Mr. House explained to the Deputies, who were familiar with him and his disability, that he had a right to bring his cell phone into the building.

44. The Deputies responded that Mr. House would be completely denied entry to the Justice Center.

45. The Deputies told Mr. House that they would arrest him if he did not leave.

46. Mr. House, now incredulous, asked the Deputies to confirm that they would arrest him if he refused to leave.

47. The Deputies then arrested Mr. House, placing him in handcuffs just after 8:08 AM, and secured an arrest warrant against him charging him with Disorderly Conduct under Tennessee Code Annotated section 39-17-305.

48. Effectively, Mr. House was arrested and criminally charged for maintaining that he needed his cell phone in order to hear and communicate effectively with his probation officer and the clerks inside the Justice Center.

49. The reasons the Deputies swore to for the arrest in the warrant affidavit were "refus[al] to comply with the[ir] order", "refus[al] to follow the[ir] directive", and "arguing with" the Deputies about the policy and becoming "belligerent". They made no mention of Mr. House's need for the use of his cell phone to manage his hearing aids.

50. Mr. House was booked into jail, where he remained for the better part of the day until he was released on bond at around 5 or 6 PM.

51. Immediately upon his release, Mr. House again called his probation officer, who was already aware of his morning arrest, to ask about rescheduling his meeting with probation.

52. Mr. House was told that she was unavailable but that she would call him back for other date and times that they could meet; however, she never did.

### D.  The Criminal Charge Against Mr. House Is Dismissed

53. The disorderly conduct charge against Mr. House was set for a hearing in the Hickman County General Sessions Court on July 15, 2024

54. Mr. House did not hear from his probation officer between the phone call after the May 22nd arrest and his court date on July 15th.

55. When Mr. House arrived at the Justice Center for court on July 15, 2024, he was arrested and taken into custody on a probation violation warrant which had been issued on June 17, 2024.

56. The basis of the violation was the May 22, 2024 disorderly conduct arrest and failure to pay certain probation fees - fees that Mr. House was intending to pay when he appeared for his May 22, 2024 probation meeting.

57. Thus, the entire basis of Mr. House's alleged probation violation stemmed from his denial of access to the Justice Center with his cell phone, a necessary accommodation for the correct functioning of his hearing aids.

58. After being taken into custody at the July 15, 2024 court date, Mr. House entered into an agreement with the State of Tennessee that same day to retire the disorderly conduct charge for a period of six months.

59. As part of this agreement, Mr. House admitted that he had violated his probation conditions by failing to pay fees.

60. The agreement further specified that Mr. House would be released from jail, but that his probation would be "revoked and extended" to a new term of six months.

61. As part of the agreement, it was proposed that Mr. House would be allowed access to the Justice Center with his cell phone on days that the general session court was not in session.

62. Judge Puckett approved and signed off on the retirement agreement.

63. Mr. House was released from jail that same day.

64. After Mr. House's release from jail, Mr. House was allowed to enter the Justice Center with his cell phone for probation meetings, even when probation staff scheduled his probation meetings on days when court was in session.

65. On January 13, 2025, the charge against Mr. House was dismissed and the probation sentence from his prior misdemeanor conviction was terminated.

## CLAIMS FOR RELIEF

### Count I: Violation of Title II of the American with Disabilities Act
### (42 U.S.C. §§ 12131-12165, and related regulations)
### (Defendant Hickman County)

66. Plaintiff re-alleges and incorporates Paragraphs 1 – 65 above by reference.

67. Plaintiff Stephen House is a qualified individual with a disability by virtue of his hearing loss.

68. The Hickman County Justice Center is a public entity of state and/or local government.

69. Access by disabled individuals to the Probation Department and Clerk's Office in the Justice Center may not be denied, as services, programs, or activities of a public entity.

70. Defendant Judge Puckett denied Plaintiff access to the Justice Center in her administrative capacity for the county by issuing a blanket rule prohibiting cell phone use in the building while making no allowances under the rule for reasonable accommodations for disabilities, such as Mr. House's hearing impairment.

71. Defendant Hickman County is liable for Mr. House's exclusion from the Justice Center because the Justice Center's administrative rules are formal Hickman County policies, and because Judge Puckett is a final policymaker for Hickman County with regard to the Justice Center's administrative rules.

72. Defendants Davis, Sullivan, and Nicholson, acting in their capacity as Hickman County Sheriff's Department deputies, denied Plaintiff access to the Justice Center by physically preventing his entrance to the building with his preferred auxiliary aid and then by detaining, arresting, and charging him for attempting to enter the building.

73. Defendants' discrimination against Mr. House on the basis of his disability inflicted emotional distress on him, cost him financially, denied him access to a public entity, and proximately caused him to be falsely arrested and subjected to unfounded criminal charges.

**Count II: False Arrest in
Violation of the Fourth Amendment
(42 U.S.C § 1983)
(All Defendants)**

74. Plaintiff re-alleges and incorporates Paragraphs 1 – 65 above by reference.

75. Defendants Deputies Davis, Sullivan, and Nicholson falsely arrested Mr. House on May 22, 2024.

76. Defendants were operating under color of state law when they arrested Mr. House.

77. Defendants lacked probable cause to believe that Mr. House had committed any criminal offense.

78. Defendants' false arrest deprived Mr. House of his liberty.

79. The Justice Center's blanket "No cell phones" policy proximately caused Mr. House's false arrest. The County is responsible for this because the "No cell phones" rule is a formal County policy, and because Judge Puckett is a final policymaker for the County. Judge Puckett was specifically aware of this issue because of prior court dates in which she had given *ad hoc* permission for Mr. House to bring his cell phone in. Thus, Judge Puckett was deliberately indifferent to the need to amend the formal policy to include disability accommodation exceptions.

80. Collectively, Defendants contributed to the false arrest which was in reckless disregard of Mr. House's rights.

81. The false arrest damaged Mr. House by depriving him of his liberty, inflicting emotional distress on him, costing him financially, and denying him access to a public entity.

**Count III: Malicious Prosecution in
Violation of the Fourth Amendment
(42 U.S.C § 1983)
(All Defendants)**

82. Plaintiff re-alleges and incorporates Paragraphs 1 – 65 above by reference.

83. On May 22, 2024 Defendants Deputies Davis, Sullivan, and Nicholson falsely charged Mr. House with the Tennessee state criminal offense of Disorderly Conduct, T.C.A. § 39-17-305.

84. The false charge deprived Mr. House of his liberty by causing him to be jailed and then having to pay a bond for his release.

85. Defendants were operating under color of state law when they initiated the false charge against Mr. House.

86. Defendants charged Mr. House with the false disorderly conduct without probable cause to believe that Mr. House was guilty of that offense.

87. The Justice Center's blanket "No cell phones" policy proximately caused Mr. House's malicious prosecution. The County is responsible for this because the "No cell phones" rule is a formal County policy, and because Judge Puckett is a final policymaker for the County. Judge

Puckett was specifically aware of this issue because on prior court dates in which she had given *ad hoc* permission for Mr. House to bring his cell phone in. Thus, Judge Puckett was deliberately indifferent to the need to amend the formal policy to include disability accommodation exceptions.

88. Defendants initiated the false charges in reckless disregard of Mr. House's rights.

89. The false disorderly conduct charge was resolved in Mr. House's favor, with a retirement and then a dismissal.

90. The false disorderly conduct charge damaged Mr. House by depriving him of his liberty, inflicting emotional distress on him, costing him financially, and denied him access to a public entity.

**Count IV:**
**Violation of the First Amendment**
**to Enter and Record in Public Offices**
**(42 U.S.C § 1983)**
**(All Defendants)**

91. Plaintiff re-alleges and incorporates Paragraphs 1 – 65 above by reference.

92. On May 22, 2024 Plaintiff attempted to enter public government offices of the Hickman County clerk's, to pay probation fees, and the Hickman County Probation Office, to meet with his probation officer, with his cell phone.

93. By the first Amendment of the U.S. Constitution, Plaintiff has an interest and a right to record the functioning of public offices and officers.

94. Judge Puckett denied Plaintiff that right by way of her blanket prohibition of the possession or use of cell phones in *any* part of the Hickman County Justice Center.

95. The Justice Center's blanket "No cell phones" policy proximately caused Mr. House's deprivation of First Amendment Rights. The County is responsible for this because it is a formal County policy, and because Judge Puckett is a final policymaker for the County. Judge Puckett was specifically aware of this issue because on prior court dates in which she had given *ad hoc* permission for Mr. House to bring his cell phone in. Thus, Judge Puckett was deliberately indifferent to the need to amend the formal policy to include disability accommodation exceptions.

96. Defendants Deputies Davis, Sullivan, and Nicholson denied Plaintiff that right by denying him entry to the Justice Center with his cell phone and arresting and charging him for disorderly conduct.

97. Collectively, Defendants obstructed Plaintiff's exercise of his First Amendment rights to record in public government offices.

### Count V: "Sheriff's Statute" Liability for Misconduct of Deputies
### (T.C.A. § 8-8-302)
### (Defendant Hickman County)

98. Plaintiff re-alleges and incorporates Paragraphs 1 – 65 above by reference.

99. Pursuant to Tennessee state law, Hickman County is liable for the misconduct of its deputies committed under color of state law.

100. Defendants Davis, Sullivan, and Nicholson are Hickman County Sheriff's Office deputies who have committed various unlawful acts of misconduct against Mr. House.

101. All acts of misconduct committed by Defendants Davis, Sullivan, and Nicholson were committed under color of state law.

102. Mr. House has suffered emotional distress, financial damages, deprivation of liberty, the violation of his rights, and the denial of access to a public entity because of the deputies' misconduct. Hickman County is liable for those damages.

### REQUEST FOR RELIEF

1. That the Defendants Answer this Complaint within the time provided by law.

2. That this cause be tried by a jury.

3. That judgment for Plaintiff enter against the Defendants on each count.

4. That Plaintiff be awarded nominal damages against the Defendants on all counts.

5. That Plaintiff be awarded compensatory damages against the Defendants in an amount to be determined by the jury.

6. That Plaintiff be awarded punitive damages against Defendants in an amount to be determined by the jury.

7. That Defendants be ordered to compensate Plaintiff's attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and F.R. Civ. Pro. 54(d).

8. That the court costs in this matter be taxed to Defendants.

9. That Plaintiff be awarded pre- and post-judgment interest against Defendants.

10. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Respectfully submitted,

*s/ Aaron Rothbaum*

Aaron Rothbaum, BPR 36572
Kyle Mothershead, BPR 22953
7000 Executive Center Dr., Suite 240
Brentwood, TN 37027
T: (615)891-3901
E: aaron@relentlesslaw.com
E: kyle@relentlesslaw.com